McDONALD, Respondent, *v.* AMERICAN BANK & TRUST CO. et al., Appellants.

(No. 6,081.)

(Submitted March 25, 1927.  Decided April 28, 1927.)

[255 Pac. 733.]

*Banks  and  Banking—Insolvency—Preferred  Claims—Tracing Trust Funds—Presumption—Interest.*

Banks and Banking—Insolvency—Preferred Claims—What Plaintiff must Show.

1.   One seeking to establish a preference claim to funds in an insolvent bank on the ground that such funds were the proceeds of a note left with the bank prior to its insolvency for collection must be able to show that the transaction created the relation of principal and agent (not creditor and debtor) between himself and the bank, thus making the bank a trustee of the amount collected for the benefit of plaintiff; that by the transaction the assets of the bank were augmented, and that he is able to trace the trust funds into the possession of the bank.

Same—Establishment of Preferred Claim—Appeal—Testimony in Conflict—Finding of Court Controlling.

2.   Where the testimony of the parties to an action to establish a preferred claim on funds held by the receiver of an insolvent bank was in substantial conflict on the question whether the proceeds of a

———

1.   Priority in case of insolvency of bank before collection of a note left for collection, see notes in 32 L. R. A. 715; 77 Am. St. Rep. 615; 86 Am. St. Rep. 788.   See, also, 3 R. C. L. 636.

note left with the bank for collection should not be placed on deposit with the bank, as contended by plaintiff, or should be so placed until plaintiff decided how to invest it, as claimed by defendant, the finding of the court in favor of plaintiff will not be disturbed on appeal.

Same—Collection of Promissory Note—Trust Fund—Presumption That Money Collected was Retained by Bank, When.

3.   Where a promissory note was left with a bank for collection prior to its insolvency, and the collection was made, it will be presumed in an action by the owner to establish a preference claim for the amount of the collection on the theory that it constituted a trust fund that, so long as a balance at least equal to the trust fund remains in the bank, the specific money collected was retained by it and constituted an integral part of the bank's money which passed into the hands of the receiver.

Same—Preferred Claim Established—Creditor Entitled to Interest Payable Out of General Assets of Bank.

4.   In an action such as the above, the creditor, on establishing his preferred claim, is entitled to interest thereon from the date of the closing of the bank, under section 7725, Revised Codes of 1921, providing that interest is payable on moneys received to the use of another and detained from him, interest being payable out of the general assets of the bank, where the receiver was justified in rejecting the claim as one proper to be passed upon by the courts.

Same—Preferred Claim and Interest Limited to What Amount—Other Preferred Claims—Prorating.

5.   A preference claim of the nature of the above is limited to the amount of funds represented by the lowest balance on hand in the bank between the time it collected the note in question and its closing and the interest to which the claimant is entitled under the above rule (par. 4) must be computed on that amount only; and where other preferred claims are established on such fund necessitating a prorating thereof among the several claimants, the interest is computable upon each claimant's portion of the fund.

---

[1]   Banks and Banking, 7 C. J., sec. 548, p. 751, n. 78, p. 752, n. 81.
[2]   Appeal and Error, 4 C. J., sec. 2855, p. 883, n. 33.   Banks and Banking, 7 C. J., sec. 523, p. 743, n. 81 New.
[3]   Banks and Banking, 7 C. J., sec. 523, p. 743, n. 81 New.   Trusts, 39 Cyc., p. 539, n. 32.
[4]   Banks and Banking, 7 C. J., sec. 523, p. 743, n. 81 New; sec. 432, p. 745, n. 3 New.
[5]   Banks and Banking, 7 C. J., sec. 529, p. 744, n. 94 New.

*Appeal from District Court, Missoula County; James M. Self, Judge.*

ACTION by Annie McDonald against the American Bank & Trust Company and George K. Dick, Receiver.   From a judgment for plaintiff, defendants appeal.   Remanded with direction to modify the judgment, which after modification shall stand affirmed.

Cause submitted on briefs of Counsel.

*Mr. Thomas N. Marlowe,* for Appellants.

*Messrs. Murphy & Whitlock,* for Respondent.

Plaintiff's claim is preferred.   The law in this state with reference to the showing necessary to entitle claimant to a preferred claim where an item has been left with a bank for collection and the bank later goes into the hands of a receiver is extremely well settled.   The best known recent case is that of *Hawaiian Pineapple Co.* v. *Browne,* 69 Mont. 140, 220 Pac. 1114.   This case follows the earlier cases of *State ex rel. Kelly* v. *Farmers' State Bank,* 54 Mont. 515, 172 Pac. 130, ·and *Guignon* v. *First Nat. Bank,* 22 Mont. 140, 55 Pac. 105.   The doctrine of the case has been followed in a more recent decision of *California Packing Corp.* v. *McClintock,* 75 Mont. 72, 241 Pac. 1077.   That the decision of the court in that case represents the weight of authority is shown by an annotation appearing in 42 A. L. R., at page 754.   The requisites necessary to establish a claim of this kind are pointed out in the *California Packing Co. Case,* where it is stated that it must appear: First.   That the relation existing as a result of the arrangements for collection is that of principal and agent and not debtor and creditor.   Second.   That the assets of the bank were augmented by the transaction; and, Third.   The ability to trace funds into the possession of the bank.

The theory upon which the preference is allowed in these cases is the theory of a trust.

Was plaintiff entitled to interest?   In the absence of statute liability exists for interest where money is received by one person to the use of another and wrongfully withheld. (Ann. Cas. 1916A, p. 115.)   In this state there is an ·express statute so providing, section 7725, Revised Codes of 1921.   In an identical section in California (section 1197, Civil Code), the supreme court of that state holds that when a bank suspends business and refuses to pay its depositors, it must be

held liable for interest on the deposits. (*McGowan* v. *Mc-Donald,* 111 Cal. 57, 52 Am. St. Rep. 149, 43 Pac. 418.)

The rule should be the same in this case unless there is some rule of law which stops interest at the time of the appointment of the receiver. We submit there is no such rule. Counsel relies upon the case of *Guignon* v. *National Bank,* 22 Mont. 140, 55 Pac. 1051, a case decided prior to the enactment of the statute above referred to. The court in that case says that in the absence of statutory provision it would seem inequitable that interest should be paid after receivership. It will be noted, however, that the court was not satisfied with that portion of its opinion and of its own motion suggested a rehearing. The rehearing was never had for the reason that the case was settled.

Counsel also rely upon the case of *State* v. *Banking Corporation,* 74 Mont. 491, 241 Pac. 626. In that case the court refused to allow interest, but the situation there was wholly different. In that case the Federal Reserve Bank was in the possession of a certain amount of money in which it disclaimed any interest, and asked that the real claimant be substituted as a party defendant. That was done, and the court directed that the money be paid over to the receiver there involved to be held by him until it could be determined who was entitled to the money. There were none of the elements of a case where money belonging to one person was wrongfully withheld by another. There the receiver was a mere stakeholder, so constituted by the court, making the situation the same as if the money had been in effect deposited with the clerk. We submit therefore, that the Montana cases are not opposed to the conclusion of the trial judge in this case. The *Guignon Case* is in point, but clearly the court was not satisfied with the opinion there announced. The later case is not in point, and is of no value as authority here.

Turning to the other jurisdictions, we find that the general rule is that the appointment of a receiver does not stop the running of interest upon claims against the corporation.

Where the claims are of equal rank so that it makes no differ-
ence whether interest is computed or not, the rule is for con-
venience that interest will not be allowed, but in all other cases
where the claims are not of the same rank, the rule is other-
wise. The general rule is stated in 34 Cyc. 372.

Even where the claims are of equal rank, interest is allow-
able where there is sufficient money to pay the principal of
all claims. (*Trust Co.* v. *Willys Corp.,* 8 Fed. (2d) 463, 44
A. L. R. 1162, and note, 44 A. L. R. 1170.) A long list of
authorities upon this question will be found in the note in
L. R. A. 1917D, page 1157. A leading case is that of *Spring
Coal Co.* v. *Keech,* 239 Fed. 48, L. R. A. 1917D, p. 1152. The
decision of the supreme court of the United States in the
case of *American Iron & Steel Co.* v. *Seaboard Air Line R. Co.,*
233 U. S. 261, 58 L. Ed. 949, 34 Sup. Ct. Rep. 502 [see, also,
Rose's U. S. Notes], seems to be accepted as the controlling
authority upon the point.

MR. JUSTICE STARK delivered the opinion of the court.

The defendant bank, a corporation under the laws of this
state, at all the times involved down to January 25, 1924, was
engaged in a general banking business at Missoula. On the
date above mentioned, being in an insolvent condition, it closed
its doors and ceased transacting business. Thereafter the de-
fendant Dick was duly appointed receiver of the bank, quali-
fied, and has at all times since been acting as such, having
complete possession and control of all its assets and business
affairs. This action was brought for the purpose of establish-
ing and enforcing a preferred claim against the assets of the
bank.

It is alleged and admitted by all the parties that on Septem-
ber 4, 1923, the plaintiff left with the bank, which was then a
going institution, a certain note for the principal sum of $6,000
and a mortgage securing the same, of which the plaintiff was
then the owner, for collection; that the same was collected in
full by the bank on September 6, 1923, and that no portion

of the amount collected was paid to plaintiff, except it is conceded that on the morning the bank closed the sum of $185 was paid to her. The real dispute between the parties is as to what was to be done with the proceeds of the collection made by the bank.

Plaintiff contends that the note was left with the bank for collection, under express directions that the proceeds, when collected, should not be deposited, but that she should be notified and the money turned over to her. Defendants, on the other hand, claim it was agreed that, when the money was collected, it was to be deposited in the bank, and a certificate of deposit therefor issued to the plaintiff. It is admitted that the money collected was mingled with and increased the general assets of the bank, and that prior to the bringing of this suit plaintiff presented to the defendant receiver a duly verified claim for preference, setting forth the facts on which it was based as above outlined, and that the same was refused.

The cause was tried before the court without a jury, and resulted in findings and judgment in favor of plaintiff, adjudging that she had a valid claim against the bank for the sum of $6,000, with interest thereon at the rate of eight per cent from January 26, 1924, amounting at the date of the judgment to $1,080; that the same was a preferred claim against the assets of the bank in the hands of the receiver for the full amount thereof, and that the same should be paid by him out of the funds and assets of the bank "in due course of the administration of said receiver's trust, said payment to be made prior to the claims of the general creditors of said bank." From this judgment the defendant appealed.

Defendants' first contention is that the evidence is not sufficient [1] to support the findings of the court and the judgment to the effect that plaintiff has a preferred claim.

It is well settled in this state that, to entitle one to a preference claim where an item is left with a bank for collection, which makes the collection and later goes into the hands of a receiver without turning over the proceeds of the collection

to the one entitled to receive the same, the claimant for the preference must establish three coexisting conditions: (a) That the transaction created the relation of principal and agent— not creditor and debtor—between himself and the bank, so that the bank would be deemed to hold the amount collected in trust for the plaintiff as beneficiary; (b) that by the transaction the assets of the bank were augmented; (c) ability to trace the trust funds into the possession of the bank. (*California Packing Corp.* v. *McClintock,* 75 Mont. 72, 241 Pac. 1077; *Hawaiian Pineapple Co.* v. *Browne,* 69 Mont. 140, 220 Pac. 1114; *State ex rel. Kelly* v. *Farmers' State Bank,* 54 Mont. 515, 172 Pac. 130; *Guignon* v. *First Nat. Bank,* 22 Mont. 140, 55 Pac. 1051, 1097.)

It is admitted in this case that the proceeds of the collection [2] of plaintiff's note were mingled with and augmented the general assets of the bank, and it was established at the trial without dispute that the least amount of cash on hand in the bank between the date of the collection of the note and the time of closing the bank was $12,022.60, and thereby the last two conditions above mentioned were fully met. In order to establish the first of the named conditions, the plaintiff testified that, when she left the note with the bank for collection, the transaction was carried on with Mr. Dahlgren, its president, and that she instructed him not to place the sum collected on deposit in the bank, but to give it to her, because she wanted the money. Dahlgren, for the bank, gave her a receipt for the note, dated September 4, 1923, reciting that it was received "for collection." She further testified that it was the understanding that when the money was collected she was to be notified, but that she was never notified that the collection had been made until the day the bank closed its doors.

On behalf of the plaintiff, the defendant George K. Dick testified that she had presented her claim for preference to him and that it had been denied; also that the records of the bank disclosed that the $6,000, proceeds of collection of the

240    McDonald *v.* American Bank etc. Co. et al.    [Mar. T. '27

[79 Mont. 233.]

note originally owned by plaintiff was received by the bank on September 6, 1923.

On behalf of defendants, the deposition of John Dahlgren, who was president of the defendant bank during all the times involved in this controversy, was read in evidence, and in it he testified that plaintiff asked the bank to sell the note and mortgage in question for her; that the bank did so, and received $6,000 therefor two or three days after plaintiff left the same with it; that it was the understanding between plaintiff and the bank that the money collected on the note was to be deposited until the plaintiff decided how much of it she was to use to buy a rooming-house, if any; that the same was to draw interest at eight per cent until she decided either to use the money for the rooming-house or buy other paper from the bank drawing the same rate of interest.

Other testimony was introduced on behalf of both plaintiff and defendants, tending to substantiate their respective contentions with reference to the third of the named conditions for preference, which we do not deem it necessary to recite. It is sufficient to state that the evidence with reference to the instructions given to the bank by the plaintiff when she left the note for collection was in substantial conflict. We cannot say that it preponderates against the findings of the trial court. Under the rule frequently announced by this court, the findings will not be set aside under such circumstances. (*Kelly* v. *Gullickson*, 75 Mont. 66, 241 Pac. 623; *Huffine* v. *Miller*, 74 Mont. 50, 237 Pac. 1103.)

There was considerable controversy at the trial over the effect of the payment of $185 made to plaintiff on the day the bank closed. Upon this matter the court made a finding that plaintiff first learned that her note had been collected by the bank on January 25, 1924, and that it was her belief that said $185 so paid to her was interest paid by the maker of the note down to January 25, 1924, and the same was accepted by her upon that assumption. This finding was warranted under the testimony.

We hold the evidence sufficient to sustain the court's findings that plaintiff had a preferred claim against the funds in the bank at the time it closed its doors.

The next point raised by defendants is that the court erred [3, 4] in awarding plaintiff interest on the amount of her claim from the date the bank closed to the date of the judgment.

The plaintiff's preference claim was for the specific amount which defendant bank had collected for her use. This was a fund which the bank held in trust for her. Her preference thereto was established, not on the theory that she had a lien thereon, or upon any of the assets of the bank, but because this specific money belonged to her, and was held in trust for her by the receiver after he took charge.

It is the established rule that, "where a trustee has mingled with his own funds money held in trust, and then dipped into the common store and taken out and used a part, so long as a balance equal to the trust fund remains, it will be presumed that the money drawn out and used was the trustee's own money, and that the money left undrawn was the trust money." (*Hawaiian Pineapple Co.* v. *Browne,* supra.) So the presumption is that the specific money which the bank collected for the plaintiff was retained by it, and constituted an integral part of its funds which passed into the hands of the receiver, and it is this specific money to which the plaintiff's preference claim attached.

This is not a case involving the distribution of the proceeds of a common security between liens or claims of different priorities. As between the plaintiff and the bank, the amount collected was no part of a common fund, for it always belonged to the plaintiff, and neither the bank nor its depositors or creditors ever had any interest or ownership therein. The receiver, from the time he took charge of the bank, simply held it as trustee for the benefit of the plaintiff.

As to this fund the relationship of debtor and creditor never existed between the bank and the plaintiff; it was that

of trustee and beneficiary. If the relation of debtor and creditor between the bank and the plaintiff had been established, the plaintiff would not have been entitled to preference, under our cases above cited.

These facts distinguish this case from those cited by counsel, which have to do with instances where the relationship of debtor and creditor existed, and involved the distribution of the funds of an insolvent corporation among creditors.

Thus we have the simple fact that the receiver was in possession of a specific sum of money belonging to the plaintiff, which he withheld from her, after demand, when she was entitled to it. Section 7725, Revised Codes of 1921, provides: "Unless there is an express contract" to the contrary "in writing fixing a different rate, interest is payable on all moneys at the rate of eight per cent per annum * * * on moneys received to the use of another and detained from him," etc.

Does the fact that in this case the money was withheld from plaintiff by the receiver of an insolvent bank remove it from the operation of the statute? Counsel for defendants rely upon two Montana cases to sustain their position, the first of which is *Guignon* v. *First National Bank*, cited above. It is true that in that case this court held, under circumstances not differing in principle from those in the instant case, that interest should not be allowed. But an examination of the opinion in that case, as well as the briefs of counsel filed therein, discloses the fact that the matter did not receive full consideration. In the opinion the court said: "The court below rendered judgment for the full amount of the sum collected, but allowed no interest. This we think correct. We have no statutory provision strictly applicable to such cases, and we think it inequitable that the assets in the hands of the receiver to which the general creditors must resort should be taken to pay interest on the sum so withheld by the receiver until he could be advised as to his duty in the premises. The

discretion of the lower court was wisely exercised in this particular, and we shall not interfere."

It seems that section 2585 of the Civil Code of 1895, which had been in effect since July 1, 1895, and which, except as to the rate of interest, is identical with section 7725, supra, was overlooked, and the refusal to allow interest was grounded on the fact that its allowance or disallowance rested in the discretion of the court, and that the lower court wisely exercised its discretion in not allowing it in that case. A memorandum appended to that opinion discloses that after it was handed down the court was not fully satisfied with its conclusion touching the question of interest, and of its own motion suggested that an application be made for rehearing upon that question, but that such application was not made for the reason that the parties reached a settlement out of court. These circumstances greatly weaken the value of that case as a precedent.

The other Montana case relied upon is that of *State ex rel. Rankin* v. *Banking Corporation,* 74 Mont. 491, 241 Pac. 626. In that case the court refused to allow interest, but the situation there was wholly different. There the defendant Federal Reserve Bank had in its possession certain money in which it disclaimed any interest, and asked that the real claimant be substituted as a party defendant. That was done, and the court directed that the money should be paid over to the receiver therein involved, to be held by him in a special fund until it could be determined who was entitled to it. There were none of the elements of a case where money belonging to one person was wrongfully withheld by another. There the receiver was a mere stakeholder, so constituted by the court, making the situation the same in effect as if the money had been deposited with the clerk of the court.

We now pass to a consideration of the question whether, under the circumstances, the receiver was justified in refusing to turn the money over to the plaintiff when she presented her claim therefor as a preference. We have given the entire

record careful consideration, and from it conclude that the receiver was justified in the position which he assumed. We think it was not only his right, but his duty, to require the plaintiff to establish her preference by action in court.

In *Chemical National Bank* v. *Armstrong* (C. C. A.), 59 Fed. 372, 28 L. R. A. 231, it appeared that a controversy arose between the plaintiff bank and the defendant Armstrong, who was receiver of the Fidelity National Bank of Cincinnati, over the payment to plaintiff of $100,000 in dividends. The receiver resisted the payment, but the plaintiff eventually prevailed, and then the question whether the plaintiff was entitled to interest on the amount of the dividends after demand had been made for the same, and refused, was considered by the court. The decision in that case was rendered by Judge Taft, then a Circuit Judge, and in the course of the opinion he said: "It remains only to consider the interest on the dividends to be paid on the $100,000, which should have been allowed by the receiver in accordance with the opinion of this court at the time that he rejected the claim. The question at issue between the receiver and the Chemical Bank was one of such doubt that it would have been quite improper for him not to try it in court. The chance of his sustaining his view was sufficiently great to make any reasonable expense in seeking to maintain it in court a fair charge against the other creditors, because of the possible benefit they might derive by a successful issue of the litigation. Now, a part of the reasonable expense of refusing to pay what is believed to be an unjust claim, but which is held thereafter to be a just one, is the damage from the delay to the person to whom the payment should have been made, a damage which is measured by interest on the amount due and unpaid during such delay. It is equitable and just, therefore, that the share of the other creditors in the assets of the bank should be reduced by enough to pay the interest on the delayed dividends on the $100,000 from the date of the rejection of the claim until such dividends are paid. This conclusion is fully sustained by the decision

of the supreme court in the case of *Armstrong* v. *Bank,* 133 U. S. 433, 10 S. Ct. 450 [33 L. Ed. 747]. In that case— which also grew out of the failure of the Fidelity Bank—the creditor bank had presented its claim to the receiver, in September, 1887, and it was rejected. The circuit court held that the claim should have been allowed, and adjudged that interest must also be allowed on the dividend declared October 31, 1887, until the dividend should be paid. The supreme court affirmed the circuit court, both in regard to the validity of the claim and also as to the interest.'' The amount of the dividends involved in the above case did not constitute a trust fund such as we are considering, but was money which the receiver held for the use of the Chemical Bank and had detained from it. The rule there announced, and which had theretofore received the sanction of the supreme court of the United States, is directly applicable to the facts in the instant case.

In view of the provisions of section 7725, supra, and in the light of the decision above quoted, it appears that the court did not err in allowing plaintiff interest on her preference claim. So far as the case of *Guignon* v. *First Nat. Bank,* supra, conflicts with this holding, it is overruled.

The amount of the preference claim is, of course, limited to [5] the funds available for its payment under the rule laid down in the *Hawaiian Pineapple Case,* cited above, and the interest would only be computed on that amount, since that is the sum ''detained'' from the claimant. If different preferred claims should be established upon a fund in the hands of a receiver which was not sufficient to pay all in full, and it should have to be prorated amongst the several claimants, the same rule would, of course, prevail, and the interest be computed upon each claimant's portion of the fund. In any case, when the receiver has become liable for the payment of interest on a trust fund, the interest must necessarily be paid out of the general assets of the bank in his hands, since on payment of the principal the trust fund is exhausted.

It is finally contended by the defendants that the court erred in directing the receiver to pay the plaintiff's preference claim "in due course of administration," without limiting the same to the amount of the trust fund. As indicated in what has just been said, this contention is well taken as to the amount of the principal. The judgment entered herein should be modified, so as to limit the payment of the principal from the amount of the trust fund held by the receiver.

The cause is remanded, with direction to modify the judgment in the manner above indicated, and, when so modified, it will stand affirmed. The plaintiff is entitled to her costs on this appeal.

*Modified and affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, MATTHEWS and GALEN concur.