TUTTLE, Appellant, *v.* UNION BANK AND TRUST CO.,
Respondent.

(No. 8,208.)

(Submitted November 4, 1941.   Decided November 21, 1941.)

[119 Pac. (2d) 884.]

*Mr. Ernest Abel,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Gunn, Rash & Gunn,* for Respondent, submitted a brief; *Mr. M. C. Gunn* argued the cause orally; *Mr. Dan R. Lovelace,* of Counsel.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Plaintiff appeals from a judgment of dismissal by the district court of Cascade county after a demurrer to his complaint had been sustained and he had failed to plead further.

The complaint seeks judgment against defendant personally and not as a trustee or against the trust estate, although the action purports to be upon a contract made by defendant within its powers as a testamentary trustee under a probate decree in the district court for Lewis and Clark county.

The demurrer is based upon the two grounds that the Cascade county court has no jurisdiction of the action, and that the facts stated are not sufficient to constitute a cause of action against defendant personally. The court's ruling did not state whether the demurrer was sustained upon the first, the second, or both grounds.

The complaint alleged that Edmund Whitcomb, a resident of Lewis and Clark county, died testate in 1924, and that his will, a copy of which was annexed to the complaint as an exhibit, was thereafter in the same year duly admitted to probate in the district court of that county. The will, after leaving one-third of the estate to testator's wife and $500 each to two stepsons and Mayme K. Prescott, a stepdaughter, left the remainder in trust to the defendant "to use the rents and profits and income of said residue, and so much of the principal thereof as may be necessary, for the support and maintenance of my daughter, Effie M. Whitcomb, so long as she shall live," and upon her death "a sum equal to one-third of the whole of my estate, as inventoried by my executor hereinafter named," to the Grand Lodge of the Independent Order of Odd Fellows of the State of Montana, to be used for the benefit of the Montana Odd Fellows Home, and the balance of the trust fund to his wife, Margaret M. Whitcomb.

The complaint further alleges that in 1926 a decree was entered, distributing the residue of the estate to the defendant "in trust to use the rents, profits and income of said residue and so much of the principal thereof as may be necessary, for the support and maintenance of my daughter Effie M. Whitcomb, so long as she shall live"; that the defendant accepted the trust and has thereafter acted as trustee thereof; that the residue distributed to it as trustee consisted of assets worth $10,500 and that the assets still in the trustee's hands exceed the amount sought by plaintiff; that from about April 6, 1933, to her death on about February 5, 1938, Effie M. Whitcomb was an invalid "bed-ridden and wholly unable to do anything whatever for herself without the assistance of someone else"; that between those dates Mayme K. Prescott, in her home at Great Falls, "furnished board, lodging and care to said Effie M. Whitcomb; gave osteopathic treatments to said Effie M. Whitcomb, advanced money for the use and benefit of said Effie M. Whitcomb for clothing and medical treatments of the reasonable value" of $11,212.01 "no part of which has been paid, except the sum"

of $1,065.00; that prior to suit Mayme K. Prescott had assigned and transferred her claim to plaintiff; and that prior to filing suit he had demanded payment of the $10,147.01 balance, but that defendant had refused to pay any part of it. Prayer was for judgment against the defendant for that amount with six per cent. interest from February 6, 1938.

The complaint purported to state two causes of action which differ in the sole respect that in the first it is stated that Mrs. Prescott's services and expenditures were at the defendant's special instance and request, and in the second that they were with its knowledge and consent. The demurrer was made and sustained as to both causes of action.

The question presented is whether the complaint states a cause of action against the defendant personally, without regard to its trustee capacity or the trust fund, so as to entitle plaintiff to a personal judgment against it. Plaintiff's contention is that unless in the contract a trustee specifically limits liability to the extent of the trust fund, the trustee becomes personally liable thereon.

It does not appear that the defendant has any personal pecuniary interest in the outcome of the suit, since the contract is alleged to be within the terms of the trust and the trust fund is shown to exceed the recovery sought; but it is the trustee's duty reasonably to defend any suit which will affect the trust estate. (Restatement of the Law of Trusts, sec. 178.) On the other hand, it does not appear that the outcome of this action affects the plaintiff materially, since, if he has no cause of action against the defendant personally, he has one against it as trustee so as to reach the trust estate; the question, therefore, is purely one of law, uncomplicated by questions of hardship on either party to this suit. In the final analysis, any recovery by plaintiff will apparently be at the expense of the residuary beneficiaries of the trust, but no such consideration is before us here and the question is merely whether in Montana an action lies against the trustee personally as argued by plaintiff and appellant.

There is no doubt that the old rule, originating largely from the separation of law and equity courts and the reluctance of the former to recognize trusts, is as appellant contends. It is stated clearly in the Restatement of the Law of Trusts as follows:

"The trustee is subject to personal liability to third persons on obligations incurred in the administration of the trust to the same extent that he would be liable if he held the property free of trust." (Sec. 261.)

" * * * the trustee is subject to personal liability upon contracts made by him in the course of the administration of the trust" (sec. 262) unless the contract provides that he shall not be personally liable; in which event he is not liable except for certain circumstances not necessary to mention here (sec. 263).

"A person to whom the trustee has become liable cannot reach trust property in an action at law against the trustee, although the liability was properly incurred by the trustee in the course of the administration of the trust." (Sec. 266.)

"A person to whom the trustee has incurred a liability in the course of the administration of the trust can by a proceeding in equity reach trust property and apply it to the satisfaction of his claim" (sec. 267), (1) to the extent to which the trustee would be entitled to exoneration out of the trust estate, if satisfaction cannot be obtained out of the trustee's private property (sec. 268); or (2) to the extent to which the trust estate has been benefited by the contract (unless the circumstances make it inequitable), if satisfaction cannot be obtained out of the trustee's private property (sec. 269); or (3) if by the terms of the trust the settlor manifested an intention to permit such relief (sec. 270); or (4) if it is agreed between them that the trustee shall not be personally liable but that he shall look only to the trust estate, provided the contract is within the trustee's powers (sec. 271).

The remedy in the first contingency is limited by the trustee's right to exoneration; in the second it is based upon the equitable

dislike of unjust enrichment; in the third it depends on the settlor's intention as expressed by the terms of the trust; and in the fourth it is based upon plaintiff's express waiver of the trustee's personal liability.

In the comment upon section 267 (p. 825 of the Restatement), the caveat is added "Sections 268–271 cover certain situations in which persons to whom the trustee has incurred liabilities in the course of the administration of the trust can obtain satisfaction of their claims out of the trust estate. These sections are not intended to express an opinion that a creditor cannot obtain satisfaction out of the trust estate in other situations, although the decisions of the courts do not as yet clearly permit the creditor to obtain satisfaction of his claim in other situations."

It is also stated on the same page, as further comment: "The remedy of a creditor under the rule stated in this section is by a proceeding in equity against the trustee in his representative capacity to compel the application of the trust property to the payment of his claim. This proceeding can be maintained against the trustee who incurred the liability or against a successor trustee in his representative capacity. If a judgment is given against a trustee in his representative capacity only, the judgment cannot be enforced against him personally."

Professor Scott, who as Reporter for the American Law Institute, was largely responsible for the draft of the Restatement of Trusts, says in Scott on Trusts: "In the Restatement of Trusts it is stated that creditors are allowed to reach the trust estate in the four situations above enumerated. The question remains, however, whether it is only in these four situations that he can reach the trust estate. No position on that question was taken in the Restatement, but the matter was left open. It is believed, however, that although in the present state of the authorities it cannot be stated that creditors can reach the trust estate in situations other than these four, yet the trend of the law is in the direction of extending the power of creditors to reach the trust estate."

"It is believed that the modern tendency is to make the trust estate responsible for contracts properly made by the trustee in the administration of the trust, even though the trustee is not entitled to exoneration out of the trust estate because in some other transaction he has become in default to the estate, and even though the contract did not result in a benefit to the trust estate."

" * * * The mere fact that the trustee has so administered the trust in other transactions that he is in default to the trust estate should not preclude the creditor from obtaining satisfaction out of the trust estate. Otherwise every attempt by a creditor to obtain satisfaction out of the trust estate would involve a complete investigation of the accounts of the trustee in order to determine whether he is in default to the estate. * * * It is submitted that the third person should have a direct right against the trust estate enforceable by a suit against the trustee in his representative capacity, and not merely a right to reach the trustee's right of indemnity. * * *

"The notion underlying this view is that the trustee is the manager of the trust estate and that his acts properly performed in the management of the estate create liabilities enforceable against the estate. There is a certain analogy to the doctrines of agency. The difference is that an agent binds his principal personally, whereas a trustee cannot bind the beneficiaries personally, but can only bind the trust estate. It is, indeed, provided by statute in several states that 'A trustee is a general agent for the trust property * * * his acts, within the scope of his authority, bind the trust property to the same extent as the acts of an agent bind his principal.' The terminology thus employed is not altogether felicitous, since it seems to suggest the notion that the trust estate may be a principal, * * * . The idea, however, is clear enough. Just as an agent can bind his principal personally, so a trustee can bind the trust estate, provided that the obligation is properly incurred by him. The obligee can reach the trust estate by a

proceeding brought against the trustee in his representative capacity.

"There are cases in which it has been held that the person with whom the trustee makes a contract in the proper administration of the trust can maintain a proceeding against the trustee in his representative capacity, without showing that the trustee himself has a right of indemnity against the trust estate. It must be admitted, however, that there are many cases in which such a right has been denied." (Pp. 1529–1531.)

"In the earlier law there is no doubt but that the obligations so incurred were regarded as resting upon and only upon the trustee personally. The fact that he was trustee and not beneficial owner of the trust property was regarded as irrelevant so far as his relations with third persons were concerned, however relevant it might be with respect to the relations between him and the beneficiaries. In so far as the 'internal' administration of the trust was concerned, it is true, the beneficiaries were regarded as owners of the trust property; but in so far as the 'external' administration of the trust was concerned, the trustee was regarded as owner. As to contracts made by the trustee, he and he alone was responsible for their performance, although they were made for the benefit of the trust; he and he alone was responsible for injuries caused to third persons. But the trustee, if he was not at fault in incurring the liability, is entitled to indemnity out of the trust estate. Thus as to liabilities properly incurred by the trustee, the loss, although resting primarily upon the trustee, would ultimately be shifted to the trust estate.

"There is a growing tendency today, however, to regard the trustee as not the owner of the trust estate but the administrator of the trust, even where the rights of third persons are concerned." (Pp. 1470, 1471.)

"Why have the courts been so reluctant to hold that the trustee is not personally liable upon a contract signed by him as trustee? I think that there has been a feeling that if the trustee is not personally liable it is difficult to give the third

person any remedy. * * * It is true that a claim against a decedent can be enforced against his executor in an action at law in which the judgment is given against the defendant *de bonis testatoris*. At common law, however, no similar judgment at law could be rendered against a trustee. Hence, if the trustee is not personally liable on the contract, the other party to the contract has no remedy at law. There is no difficulty, however, in permitting him to maintain a suit in equity to reach the trust estate to satisfy his claim upon the contract. And in many states today an action at law can be maintained against a trustee in his representative capacity and judgment can be rendered against him in that capacity. Such a judgment is enforceable only out of the trust estate." (Pp. 1477, 1478.)

"In states in which the distinction between actions as law and suits in equity has been abolished, the procedural difficulties in permitting an action at law against a trustee in his representative capacity should not offer any difficulty." (P. 1502.)

"It would seem moreover that in states in which courts of law are merged with courts of equity and where forms of action have been abolished, an action might be maintained in such a case to reach the trust property. This has been recognized by some courts." (P. 1503.)·

Bogert on Trusts and Trustees, in section 712, thus briefly summarizes the origin of the old rule:

"The reasons for this attitude of the courts are well known. The trustee is the only legal entity who promised to perform the contract. The trust is not a legal person, nor is the trust property. The beneficiary was not a party to the contract. And the trustee is not an agent for him. The trustee does not purport in the ordinary case to sign for the cestui, or to bind the cestui's property for the performance of the obligation. The trustee is himself a principal and the only person whom the court of law recognizes as an obligor on the contract. * * *

· "The courts of law might conceivably have held that the contract of a trustee bound him *as a trustee* and that a judg-

ment against him as a trustee could be collected by execution against the trust property. But it must be remembered that in the early days the courts of law took no cognizance of the trust and treated the trustee as complete owner of the property.''

In brief, the difficulty originated in procedural complications resulting from the diversity of legal and equitable remedies and courts. But unfortunately the courts seem to feel that substantive law (Scott on Trusts, p. 1528) has arisen from the procedural difficulties which the removal of the latter cannot change, in spite of the maxim that ''when the reason of a rule ceases, so should the rule itself'' (sec. 8739, Rev. Codes).

It has seemed preferable to quote the text-book authorities thus at length upon the historical development of the law, rather than to cite decisions. This was particularly because of Montana's constitutional and statutory provisions concerning both procedural and substantive law, in providing that law and equity may be administered in the same action (Art. VIII, sec. 28, Const. of Montana) and also in establishing agency authority for trustees and making their contracts as such directly binding upon the trust estate. Section 7914, Revised Codes, provides: ''A trustee is a general agent for the trust property. His authority is such as is conferred upon by him by the declaration of trust and by this chapter, and none other. His acts, within the scope of his authority, bind the trust property to the same extent as the acts of an agent bind his principal.''

Ordinarily one does not perform an act both as agent and principal. Section 7968, Revised Codes, provides:

''One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency, in any of the following cases, and in no other:

''1. When, with his consent, credit is given to him personally in a transaction;

"2. When he enters into a written contract in the name of his principal, without believing, in good faith, that he has authority to do so; or,

"3. When his acts are wrongful in their nature."

Although these sections have been a part of our statutes since 1895, their effect as to personal liability of trustees has apparently not been considered by this court. But although strictly speaking an agent must have a principal, and trust property not being a person, natural or artificial, cannot be a principal, the meaning of the Act seems clear enough. Its effect must be either that the trust estate is to be considered an entity chargeable as a principal for the acts of the trustee, its agent, or that the legal incidents of the trustee's authorized acts, so far as the parties are concerned, are the same as those which would attach to an agent's authorized transaction for his principal.

In either view, it seems quite evident that in order to give reasonable effect to the statutes we must hold, under the circumstances of this case, where there are no intervening equities against the trustee personally in favor of either beneficiary or third party, that the trustee is not personally liable but that the remedy is an action against it as trustee, and that a judgment against it in that capacity is limited in its application to the trust estate.

We are aware that the California courts have held otherwise, not however between the enactment in 1872 of section 2267, California Civil Code, and Montana's enactment in 1895 of the identical provision, now section 7914, Revised Codes, supra. Therefore those holdings cannot be considered as adopted along with the statute, and they do not appeal to us as giving effect to the expressed intent of the legislature. Since the statute makes the trustee a general agent for the trust property, and his acts within the scope of his authority bind it to the same extent as an agent's acts bind his principal, and the principal's act through the agent is not the agent's act, the obligation under

the facts here pleaded is clearly that of the trust estate and of the trustee as such, and not of the trustee personally.

The plaintiff's predecessor in interest knowingly contracted with the trustee as such, and since there is in Montana no artificial barrier to his suit against the trustee as such so as to recover directly from the trust estate, and since the obligation is not that of the trustee personally, there is neither reason nor justification for countenancing the circuitous method considered necessary by many courts in the past.

This is in line with reason and with the modern trend, which seeks to eliminate technicality. The trend has been pioneered by the legislatures of the western states, especially by those of California and Montana under the modern spirit of the Field Code; and it is regrettable that in some respects the courts have not given it full effect and support.

A still more recent attempt to eliminate the roundabout method in this particular respect has been made during the past ten years by the National Conference of Commissioners on Uniform State Laws, which adopted a Uniform Trust Act in 1937. The latter has already been enacted by the legislatures of Louisiana, North Carolina and Nevada, and effects further needed reforms, such as the requirement of mandatory notice to beneficiaries of such actions.

The trial court committed no error in sustaining the demurrer and entering judgment for defendant. Plaintiff did not offer to amend his complaint, and disavows any purpose to hold defendant in its trust capacity in this suit. Therefore the questions whether plaintiff might have amended the complaint so as to change the cause from an action against defendant personally to one against it as trustee, and whether the district court for Cascade county would have had jurisdiction of such an action, are not before us.

The judgment is therefore affirmed.

ASSOCIATE JUSTICES ERICKSON, ANGSTMAN, ANDERSON and MORRIS concur.

Rehearing denied December 27, 1941.